## JOHN ALEXANDER v. J. L. ELLIS.

ERROR TO THE COURT OF COMMON PLEAS OF JEFFERSON
COUNTY.

Argued October 4, 1888—Decided January 7, 1889.

When a tract of unseated land, owned in severalty by different persons who have not subdivided upon the ground and returned for separate taxation, is assessed as a whole and sold for unpaid taxes, if one owner within the time limited pay the taxes, costs and penalty to the county treasurer, as a redemption of the whole, such payment will operate to divest the title of the tax-sale purchaser to the entire tract.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and WILLIAMS, JJ.; CLARK and HAND, JJ., absent.

No. 117 October Term 1888, Sup. Ct.; court below, No. 186 September Term 1881, C. P.

On July 18, 1881, Jabez L. Ellis brought an action of trespass against John Alexander to recover treble damages, under the act of March 29, 1824, 8 Sm. L. 283, for timber trees cut down and converted. The defendant pleaded, not guilty.

At the trial on October 13, 1887, the evidence in support of the plaintiff's title to the locus in quo was in substance as follows:

On November 15, 1793, land warrant No. 4278 was issued by the commonwealth in the warrant name of John Barron, Jr. A survey having been made and returned, on March 9, 1818, a patent issued thereon to Joseph H. Barry, whose title to the whole became vested in T. W. L. Freeman on November 12, 1844. Afterwards T. W. L. Freeman conveyed as follows: To Chas. D. Freeman, by deed dated August 28, 1845, recorded December 29, 1845, the several parcels numbered respectively 1, 2, 3, 4, 5, 6, 8, 9, and 11, " according to the plan or draft of subdivision intended to be filed of record in the recorder's office of Jefferson county, being part of warrant tract No. 4278," etc. To J. H. Jones by deed dated November 10, 1845, recorded October 19, 1866, the parcel designated as No. 10 on " a plan, etc., intended to be filed of record," etc. To

Statement of Facts.

H. R. Norman, by deed dated January 4, 1846, recorded February 3, 1848, the parcel known as No. 7, " according to a plan or subdivision of a larger tract," etc. With this deed there was put on record the following plan :

| Post. | | | 555½ | | Hemlock. |
|---|---|---|---|---|---|
| No. 11. | No. 9. | No. 8. | No. 5. | No. 4. | No. 1. |
| | 100 acres. | 100 acres. | 100 acres. | 100 acres. | 100 acres. |
| | | | No. 4278. | | |
| 320 · 44.114 | No. 10. | No. 7. | No. 6. | No. 3. | No. 2. |
| | 100 acres. | 100 acres. | 100 acres. | 100 acres. | 100 acres. |
| Post. | | | No. 4277. | | Birch. |

At the triennial assessment made in 1846, for the years 1847, 1848, and 1849, the entire warrant tract 4278, then unseated and without subdivision on the ground, was assessed at 1046 acres, in the name of John Barron, Jr., " warrantee or owner."

On November 3, 1847, recorded January 7, 1848, Charles D. Freeman conveyed to James Magee the parcels numbered 1, 2, 3, 4, 5, 6, 8, 9, and 11, as conveyed to him by T. W. L. Freeman, " containing in all 844 acres and 114 perches and allowance."

In 1850, the entire warrant tract 4278 was advertised for sale for the unpaid taxes of 1848 and 1849. On June 8, 1850, David McLaughlin, claiming to own the Jones parcel, No. 10, as was alleged, paid the taxes on 120 acres, and on June 10th the treasurer of the county sold the remaining part of the tract as containing 926 acres to John J. Y. Thompson for Robert Orr, to whom the deed was acknowledged.

On May 12, 1852, James Magee paid to the county treasurer $53.74, in full for the amount of the taxes, costs, and twenty-five per cent thereof added, " on redemption of tract of land in Snyder township, warranted in the name of John Barron, No. 4278, and containing 844 acres, which said land was sold

by my predecessor to John J. Y. Thompson, at the sales of 1850."

On December 18, 1852, James Magee conveyed to John Alexander, the defendant herein, 732 acres adjoining Nos. 7 and 10.

On February 24, 1859, Robert Orr conveyed with special warranty parcel No. 7, to J. L. Ellis, the plaintiff below, described as containing 100 acres strict measure.

This parcel, No. 7, was the locus in quo of the trespass complained of in this suit, the plaintiff claiming under his deed from Robert Orr, and alleging that Alexander had caused the cutting and conversion of the timber standing thereon in the fall of 1880 and the succeeding winter.

Disputed questions as to the title of the defendant are not material to the case as decided.

The court, WICKHAM, P. J., 36th district, holding special term, after reviewing the testimony in part, charged the jury as follows :

Then, gentlemen, what next? Charles D. Freeman, by his deed dated November 3, 1847, conveyed his nine parcels or subdivisions to James Magee, whose name figures prominently in this trial, it being alleged that the defendant in this case succeeded to his title. Norman and Jones, for aught we know from the records, held on to their properties ; but, if the records are to be believed, the time came when they each and all forgot or neglected to pay their taxes. The taxing powers, ignoring, or ignorant of, the subdivision of the tract and change of ownership, went on assessing tract 4278 as a whole. The taxes for 1848 and 1849 seem to have been unpaid, consequently the right of the public to sell the land for taxes ripened in 1850, or earlier. On June 8, 1850, an entry in a book from the treasurer's office, put in evidence, shows that D. McLaughlin paid the taxes on one hundred and twenty acres of the tract. It is alleged here in behalf of the plaintiff that the one hundred and twenty acres was the Jones subdivision, No. 10. Two days after McLaughlin paid the taxes on the one hundred and twenty acres, which would be June 10, 1850, the remainder of the land, estimated at nine hundred and twenty-six acres, was sold, it is claimed by the plaintiff, for taxes, to Robert Orr. It

is alleged that the treasurer's deed made to Mr. Orr has been lost; the loss of the deed, if its existence is sufficiently proved, would not in itself impair in any degree the plaintiff's title. You have the books and other records before you, and you must determine the fact of the sale for yourselves. Were the taxes in arrear? If so, the right to sell therefor existed. Was the sale made? Was Orr the purchaser? Did he receive a deed from the treasurer? Answer these questions, gentlemen, in the light of the evidence.

On May 12, 1852, nearly two years after the alleged tax sale, as an entry in one of the county treasurer's books and a receipt here offered in evidence show, eight hundred and forty-four acres of the land sold was redeemed by James Magee. Quite a controversy arises here between the plaintiff and the defendant; the plaintiff avers that Magee only intended to redeem, and actually did redeem, the nine parcels he bought from Charles D. Freeman; these nine parcels, or subdivisions, contained, according to the deed to Magee, eight hundred and forty-four acres and one hundred and fourteen perches, and, I believe, allowance; he redeemed eight hundred and forty-four acres, according to the proof. [The defendant contends that Magee redeemed subdivision No. 7. The evidence showing that he sought to redeem more than his own land is not clear; in the opinion of the court it is not sufficient to justify a finding that he did so; but the view taken by the court of the law governing the redemption of lands sold for non-payment of taxes, makes Magee's alleged effort towards redeeming the Norman lot, if he ever made such an effort, of no importance in the case. Magee never owned the Norman lot; he never claimed to own it; he had no interest of any kind in it; as a consequence, his voluntary act as a mere stranger could not deprive Orr of his title to the Norman lot under the treasurer's deed, if any title Orr had. Magee could redeem his own eight hundred and forty-four acres and no more; and, indeed, under all the evidence, as I have already intimated, it would be difficult, and impossible, perhaps, to say that he tried or intended to do more than this. So far as subdivision No. 7 is concerned, he was a stranger, and, if our opinion of the law is correct, any interference with it would be an act of intermeddling between Orr, the alleged purchaser at the treasurer's sale, and

Henry R. Norman, or those claiming under him, in whom and whom alone the equity of redemption was vested.][1] Nothing is shown in the way of a ratification on Orr's part of Magee's alleged act in redeeming, or attempting to redeem, this parcel. A rule that would require the owner of land in severalty, sold as part of a larger tract, to redeem the whole tract might produce great injustice; the ignorance, neglect, perversity, or fraud of an assessor might cast upon a poor man possessing but one acre the duty of redeeming ten thousand acres to save his own. The rule that would permit a mere stranger to redeem land wherein he had no color of title or interest, and whereto he had no shadow of claim, would give him a right to intermeddle without excuse, to divest title with which he had no possible concern. The law does not encourage, nor as a rule permit, volunteers to injuriously interfere with the vested rights of others.

Passing on we find that on February 24, 1859, Robert Orr and wife conveyed the Norman lot, or subdivision No. 7, to J. L. Ellis, the plaintiff in this case. Now gentlemen, if you find that a sale of tract 4278, or so much thereof as lies in Jefferson county, was made by the treasurer of Jefferson county in 1850 for the taxes assessed for 1848 and 1849; that Robert Orr became the purchaser and got a deed; that subdivision No. 7 of the tract remained unredeemed in Orr's hands; that he sold this lot to the plaintiff; that the latter was still the owner when the alleged trespass was committed, and such trespass actually was committed, the plaintiff would be entitled to recover unless something further appears in the case.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

A number of points have been submitted by the counsel on both sides, which the court will now proceed to answer, taking up those of the plaintiff first. We are asked by the plaintiff to charge you [inter alia]:

3. No one but an owner, or one who has at least a colorable title, has any authority to redeem from a tax sale, and as there is no evidence in this case that James Magee, when he redeemed eight hundred and forty-four acres of 4278 on May 12, 1852, had any title whatever to the Norman lot, known as subdivision No. 7, his redemption of said eight hundred and forty-four acres would not defeat the title of Orr under said tax sale, no

Opinion of Court below.

matter whether said eight hundred and forty-four acres did or did not cover the said Norman lot.

Answer: As the evidence excludes any inference that Magee either owned or claimed any interest in the Norman lot, this point is affirmed.[3]

The defendant through his counsel presents the following points [inter alia]:

6. That as the redemption receipt of E. R. Brady, treasurer of Jefferson county, dated May 12, 1852, is for an amount of money covering the amount of the tax and costs for which the sale was made by the treasurer, John Gallagher, in 1850, together with twenty-five per cent redemption money additional thereto, and by its terms is in full redemption of the tract of land in Snyder township, Jefferson county, warranted in the name of John Barron, No. 4278, it shows a full redemption of the tract, and your verdict should be for the defendant.

Answer: This point is refused.[4]

\*    \*    \*    \*    \*    \*    \*    \*

The jury returned a verdict for the plaintiff, for the value of the timber cut and converted, $3,176, and for the value of the timber cut and not removed, $40.

A rule for a new trial was discharged on May 17, 1888, the court, WICKHAM, P. J., filing an opinion which after reviewing the facts proceeded:

Assuming that Magee intended and undertook to redeem not only his own nine parcels but the Norman parcel as well, there is nothing in the evidence to indicate that either Norman, or Orr, the purchaser at the tax sale, assented to or in any way ratified his (Magee's) act. Can it be said that Magee, contrary, perhaps, to the wishes of both Norman and Orr, and probably without their knowledge, could, by his unauthorized and unratified act, divest Orr of his title? If so, then this is, perhaps, the only instance where, among persons sui juris, such power is lodged in the hands of a mere volunteer.

It is argued for the defendant that where a tract of land owned by a number of persons in severalty is assessed as a whole, it must, if sold, be redeemed as a whole, owing to the difficulty the treasurer might find in justly apportioning each owner's share of the tax. The same difficulty would be experienced, of course, before the sale, if one owner desired to pay

his tax and save his property from being sold; and it would apply equally to seated and unseated lands. Hence, a blundering or knavish assessor might assess in one name and as one parcel a block of unimproved city lots worth a hundred thousand dollars, and owned in severalty by a score of people, and thus compel the owner of any one lot, if he desired to save it from sale, to pay the taxes on all, or to advance the taxes, costs, and penalty in order to redeem. It may, of course, be said that this is suggesting an extreme case; extreme cases, however, often best illustrate the law.

Assessments are often made, as in the case here under consideration, in the names of former owners, and are not, for that reason, illegal. But where this is done, it follows that no notice is given to the true owner of his right to appeal, consequently the first official intimation he may have that his land is embraced or continued for taxation as part of a larger tract, as well as the first demand for payment, comes in the form of an advertisement of a contemplated treasurer's sale. He should then have the right to tender his proper proportion of the taxes and relieve his land. I am aware of no statute or rule of law which clogs this right, or the right of redeeming, with the condition that he shall pay all the assessments on, perhaps, half the lands in a township, because a lazy, careless, or uninquiring assessor has assessed them as a single tract, to one whose life and title were notoriously things of the past, ere the officer, who thus seeks to perpetuate both, was born.

It is true that the act of April 28, 1806, provides that the owners of unseated lands shall furnish a description thereof to the county commissioners, but the penalty for failure to do so is quadrupling the tax on the land actually owned, and nothing more. Section 31, of the act of April 25, 1850, confers on joint owners, tenants in common, and coparceners the right to pay their proportionate shares of taxes before sale; and section 3, of the act of March 9, 1847, gives the same classes of owners the right to redeem their own interests after sale. It can hardly be supposed that the legislature would have failed or refused to extend the same measure of relief to owners in severalty, whose lands were lumped for purposes of taxation, if the law, as it then stood, was deemed insufficient

to protect them. It seems to me that the rule applicable to this latter class was clearly indicated in the case of McCord v. Bergautz, 7 W. 490. The view thrown out by the Supreme Court in that case is, that " where two own distinct parts, each or any one of them may redeem his own part."

The alleged difficulty in apportioning the amounts to be paid by each should not stand in the way of justice. In the present case the treasurer must have found some method of solving the problem, as he accepted from McLaughlin the proportion of the whole amount of the taxes for which he was deemed properly liable. In Dietrick v. Mason, 57 Pa. 40, where two tracts, one seated and the other unseated, were assessed to the warrantee, and sold as one, the treasurer, in order to allow the owner of the unseated part to redeem, adopted a plan of apportionment, which seems to have been satisfactory to the court below and the Supreme Court. In a matter of this sort, approximate accuracy is all that ordinarily should be required or expected, and with that we have to be satisfied in reaching decisions regarding many questions of fact.

If the views herein announced are correct, it must be admitted that any attempt on the part of Magee to redeem more land than he owned would be, under all the circumstances of this case, sheer intermeddling and devoid of efficacy.

It is undoubtedly true that he, or even a stranger, might pay the taxes on the whole tract before sale, and thus relieve it; but authorities need not be cited to prove that the inchoate title of a purchaser at a tax sale cannot be divested or stricken down by the act of one who neither has nor claims for himself, or as agent for the original owner, any right, title, or interest to or in the land. The purchaser can say to all outsiders, hands off, and the county treasurer has no power to deprive him of this right.

The judgment in this case must be for double and treble damages. The plaintiff's motion to this effect is opposed by the defendant, but the words of the statute are imperative and cannot be disregarded: Watson v. Rynd, 76 Pa. 59; Kulp v. Bird, 7 Cent. R. 576.

And now, to wit, May 17, 1888, the defendant's motion for a new trial is overruled, and judgment is directed to be en-

tered on the verdict for the plaintiff, for the sum of $9,608, with costs of suit.

Judgment having been entered as directed, the defendant took this writ, assigning as error, inter alia :

1. The part of the charge embraced in [ ] [1]
3. The answer to plaintiff's third point.[3]
4. The answer to defendant's sixth point.[4]

*Mr. R. C. McMurtrie* (with him *Mr. Charles Corbet*), for the plaintiff in error :

The effect of the redemption by Magee in 1852, is the one question in the case which it is proposed to argue on this writ.

1. Until 1862, a part owner of a distinct portion of unseated lands was not authorized to redeem on any other terms than those imposed by the statute authorizing the sale. These terms are found in the act of March 13, 1815, 6 Sm. L. 301, and it could only be done by a legal tender of the amount of taxes for which the lands were sold and the costs, together with the additional sum of twenty-five per cent on the same ; this payment to be made to the county treasurer, who is required to receive it, and pay it over to the purchaser on demand. But the act of April 3, 1862, P. L. 228, authorized a redemption by one owning part of a tract, on paying the legal amount of the taxes assessed on so much of the tract as is included within the lines under which he claims to hold title. Neither Magee nor any one else had complied with the direction of the act of March 28, 1806, 4 Sm. L. 346, and returned the parcels he had acquired by the sale and conveyance to him, and until the act of 1815 was changed neither could redeem from the tax sale of 1850 save on the terms of redeeming the whole tract, whatever might be the nature of his interest or estate : McCoy v. Michew, 7 W. & S. 386.

2. If there be a hardship, it is the result of the failure of the owner to perform his duty to return his own parcel of land for taxation. That his duty was to return the land he claimed for taxation was pointed out in Harper v. F. & M. Bank, 7 W. & S. 212. The same point was ruled in Brettaugh v. Coal & Iron Co., 7 Amer. L. Reg. N. S., 109 ; Maul v. Rider, 51 Pa. 382. The county commissioners are bound to assess according

to the original survey and as one parcel, unless an owner sees fit to return his land for taxation in parcels : Reading v. Finney, 73 Pa. 472 ; Morton v. Harris, 9 W. 326 ; Brown v. Hays, 66 Pa. 235 ; Heft v. Gephart, 65 Pa. 510. No personal liability arises by reason of subsequent occupation, nor can payment be enforced because of such occupation, however long it may have existed before the sale, or whatever may have been the improvements made upon the property : Robinson v. Williams, 6 W. 281 ; Murray v. Guilford, 8 W. 548 ; Riddle v. Bedford Co., 7 S. & R. 386, 390 ; Morton v. Harris, 9 W. 319.

3. The position that we assert in this argument, to wit, that the statute must be strictly followed in respect to redemption, is sustained by authorities elsewhere : State v. Schaack, 28 Minn. 358 ; Boyd v. Holt, 62 Ala. 298 ; O'Reilly v. Holt, 4 Woods 650. Moreover, that a person, though entitled to redeem his own part under the act of 1862, may, if he see fit, redeem for all, as he was compelled to do before the act of 1862, was decided, under a similar statute, in Loomis v. Perigree, 48 Me. 312. Finally, the point here is simply this : By what act of assembly in 1850 could Magee have redeemed his land, sold for taxes, and upon what terms ? Was it not by paying the whole of the tax for which the tract had been sold, with costs and twenty-five per cent additional ? Was he authorized to annul the sale on any other terms ? And did not the statute make that payment operate to redeem the whole tract ?

*Mr. B. J. Reid* (with him *Mr. A. B. Reid* and *Mr. E. H. Clark*), for the defendant in error :

1. The act of 1862, cited by the defendant, was intended to provide for cases of interfering surveys only, where there are two or more conflicting titles or surveys covering part of the same land. In our case, on the contrary, there was no interference, no overlapping or conflict of titles, but simply an assessment of an entire tract as one, which previously had been divided into three several parcels. No implication, therefore, arises from the passage of that act that prior thereto there was no authority for one of two or more owners of several parcels to redeem his own land by paying his proportionate part of the redemption money. Such right, moreover, was

expressly recognized, before the act of 1862, in McCord v. Bergautz, 7 W. 490. And in Dietrick v. Mason, 57 Pa. 40, though decided after 1862, the redemptions in question were prior to that act. These cases show that before the act of 1862, there was no rigid rule such as is asserted in this case. And again, the penalty under the act of 1806, for not returning one's land for assessment, is confined to the fourfold tax provided by the act.

2. The inconvenience of proportioning is imaginary. It is a simple matter of calculation. In this case, the treasurer made an apportionment before the sale, in favor of David McLaughlin. The dictum of Justice ROGERS in McCoy v. Michew, 7 W. & S. 391, is no authority for the defendants' contention, for the reason: (1) No question of redemption arose; (2) it was a case of interfering surveys, not of the subdivision of an entire tract; and (3) the learned justice was not speaking of the owner of one of several distinct parcels, but of the owner of one entire tract which, except 12 acres, was all covered by three distinct junior surveys, which had been separately sold for taxes. And a reference to Morton v. Harris, 9 W. 327, will show that the learned justice did not contradict what he had previously ruled in McCoy v. Michew. Nor is Maul v. Rider, 51 Pa. 383, an authority for the position urged, for the point decided was that a redemption by one tenant in common, under the circumstances of that case, was necessarily a redemption for both.

3. But how is a purchaser of a tax title injured by a redemption of the whole by a part owner? He gets back his money with twenty-five per cent additional, for the part redeemed, and for the unredeemed part he gets the land itself; in either case, all he bargained for. He knows when he bids that he will obtain only an inchoate title, which may be defeated in whole or in part by many contingencies as to which he must take the risk. At any rate, if he does not complain of a redemption of a part of the land he bought, it does not lie in the mouth of a stranger to complain for him. "When the purchaser himself has ratified an unauthorized act of redemption, who can be permitted to object to it?" Orr v. Cunningham, 4 W. & S. 298.

OPINION, MR. JUSTICE WILLIAMS:

In 1844 the tract of unseated land in the warrantee name of John Barron, No. 4278, containing ten hundred and forty-four acres, was owned by T. W. L. Freeman. In 1845 he projected on paper a division of his tract into eleven lots, but no lines were run on the ground, nor was there any natural monument or other mark indicating the subdivision or the position of any one of the lots. In the same year he conveyed eight hundred and forty-four acres of the tract, covering all the lots except Nos. 7 and 10, to Charles D. Freeman. He soon after conveyed No. 7 to H. R. Norman, and No. 10 to J. L. Jones, as containing one hundred acres each. The tract continued to be assessed as a whole in the name of the original warrantee, and in 1850 it was advertised for sale by the treasurer of Jefferson county for the non-payment of the taxes of 1848 and 1849. Before the sale, David McLaughlin paid the taxes upon one hundred and six acres, and the treasurer, deducting the money paid from the whole amount of taxes and one hundred and six acres from the number of acres at which the tract was assessed, proceeded to sell the warrant as containing nine hundred and twenty-six acres to Robert Orr. In May, 1852, Magee, who had succeeded to the title of Charles D. Freeman to eight hundred and forty-four acres of the tract, sent his agent to the office of the county treasurer to redeem his lands. He paid the redemption money upon the whole tract, as it was sold, and took the treasurer's receipt therefor, in which, after acknowledging the payment by Magee of the sum of $53.74 in full for the redemption money, the treasurer described the land as a tract "warranted in the name of John Barron, No. 4278, and containing eight hundred and forty-four acres." It had been sold by the same description, except that the quantity of land had been stated to be nine hundred and twenty-six acres. The tract redeemed was the same that had been sold as the John Barron, No. 4278; and the variance in stating the number of acres it contained was in an immaterial matter of description.*

The question raised upon these facts, is whether the redemption by Magee divested the title of the purchaser at tax sale

---

* See Putnam v. Tyler, 117 Pa. 570.

as to the whole tract, or only to so much of it as was actually owned by Magee when the redemption was made. This question is answered by considering the nature of the transaction. The treasurer is a public officer. What acts are necessarily performed by him in the sale and redemption of unseated lands are done by him as the agent of the law. The act of 1815 provides that the owner may offer the money necessary to redeem his lands from a sale for taxes to the county treasurer, "who is hereby authorized and required to receive and receipt for the same," and pay it over to the purchaser. The payment of the money to the treasurer is, prima facie, a payment to the purchaser, and divests his title. If the purchaser denies the sufficiency of the redemption for any reason, he must show affirmatively that he has not taken the redemption money before he can be heard to deny the effect of the payment to the treasurer. The legal presumption is that the treasurer has paid the money to him, and it is very clear that he could not be allowed to hold the money and the land at the same time. This consideration alone would dispose of the question now raised. The legal effect of the receipt of the treasurer for the redemption money due upon any given tract of land is shown by Bubb v. Tompkins, 47 Pa. 359. In that case the treasurer had, by mistake, failed to include the taxes paid by the purchaser after the tax sale, with the redemption money, and had given the owner a receipt in full for the redemption of the tract without noticing his mistake. The act of the treasurer was held to constitute a valid redemption of the land, and the purchaser was required to look to the treasurer for the money which his mistake had left uncollected.

But there is another reason why the redemption by Magee was effectual as to the whole tract. The assessment was made upon the tract as a whole by its number and the name of the warrantee. It was sold as a whole by the same description. There were no division lines on the ground. Whether an examination was made upon the surface of the tract, or upon the tax records, the tract and its assessment were entire. When Magee came to redeem the eight hundred and forty-four acres in the warrant to which he had title, he had no safe course to pursue except to redeem the tract. He owned fully nine tenths of the land sold by the treasurer as warrant No.

4278, but he could not point out what belonged to him on the ground, or distinguish it from what was not his, for it was not separated from the body of the tract by lines, or located by any natural landmark. The payment of the whole redemption money, was therefore the only prudent, if not the only possible, method of redeeming his own land. If, upon the facts of this case, he had offered part of the amount necessary to redeem the tract, it is probable that the treasurer would have declined to receive it; but, if he had received it, would the purchaser have been compelled to accept less than his bid, and the interest allowed by law from the treasurer? Could a tract which had been assessed and sold as a whole, and which was undivided on the ground, be split up in the hands of the purchaser by the payment of fractional parts of the redemption money to the treasurer?

These questions show the wisdom if not the necessity of the redemption by Magee of the entire tract as sold. If the several part owners had complied with the requirements of the law by returning their separate holdings for taxation, they would have been separately assessed, each with his own land. In that case Magee would have had no possible interest beyond his own lines, and no standing from which to redeem the separate lot of any other owner which might be sold by the treasurer. All the lots so assessed and sold would require to be separately redeemed, and such redemption could be made only by or on behalf of the owner or his lien creditor. But as we have seen, none of the part owners of No. 4278 had returned his land for taxation, or caused his lines to be run on the ground, and it is to be presumed that for this reason the tract continued to be assessed as a whole. The taxes were a lien upon the land, and in the absence of any division upon the ground or upon the tax records, they were a lien on the whole tract. The whole tract was sold for their non-payment. The whole redemption money was paid in due time by one who owned a large but unseparated part of the tract, and this divested the title of the purchaser absolutely. The court below was in error in its rulings upon this question, which is the controlling question in the case.

The judgment is therefore reversed.